James Thomas Wright, Jr. v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-162-CR

JAMES THOMAS WRIGHT, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted appellant James Thomas Wright, Jr. of two counts of aggravated sexual assault with a deadly weapon and one count of possession of a firearm by a felon.  The jury assessed Wright’s punishment at forty-five years’ confinement for each of the aggravated sexual assault offenses and ten years’ confinement for the firearm offense.  
In a single point, Wright complains that the evidence is legally insufficient to support his convictions for the two counts of aggravated sexual assault.
(footnote: 2) 
 The State asserts that the evidence is amply sufficient to support Wright’s convictions. 
 We affirm.

II.  Background Facts

On May 8, 2001, Vicki Jackson was walking down the street when a man and woman drove up to her in a Jaguar.  The woman, whom Jackson knew by the name “Classy,” asked Jackson if she would like to go get a beer. Jackson did not know the man driving the Jaguar, but she agreed and got into the back seat of the car.  The group drove to a club known as the Matchbox, and Classy got out of the Jaguar to get beer.  When Classy had not returned to the car after several minutes, the man in the driver’s seat became agitated, began fumbling under his seat, and pulled out a gun.  The man pointed the gun at Jackson’s head and pulled her over the seat into the front of the car.  The man accused Jackson and Classy of “setting him up” and told Jackson, “You gonna pay for this.”

The man drove Jackson to Katy Street and stopped the car.  He pointed the gun at Jackson’s head and forced her to perform oral sex on him in the front seat of the Jaguar.  Jackson testified that during the ordeal several witnesses passed by, but the man pointed his gun at them and told them to go the other way.  After Jackson performed oral sex on the man, he pulled her out of the car and made her pull her clothes down and bend forward against the side of the Jaguar.  While holding the gun to Jackson’s head, the man penetrated Jackson’s sexual organ with his own.  Jackson testified that she did not consent to have sex with the man.  The assault outside the Jaguar continued for about ten minutes while Jackson begged the man to stop and called out for help from witnesses.

Finally, a woman named Trevia Coleman came down the street calling out loudly, “Pookie Ray.”  The man looked up at the woman calling out to him, stopped assaulting Jackson, ran around the car pulling up his pants, and drove away.  Coleman and a second witness stayed with Jackson in the street until the police arrived.

Officer Leary arrived at the scene and was told that the assailant was a black male with a shaved head driving a maroon Jaguar.  Jackson informed Officer Leary that her assailant had tattoos on his arms of a rose and the nickname “Pookie.”  Coleman added that the man had something written on his upper back, but said she could not be sure what the writing said.  Coleman also gave Officer Leary the true name of Jackson’s assailant, James Thomas Wright. 

Officer Leary searched the surrounding area and discovered Wright outside of Louise Craven’s house about a quarter of a mile from the scene, standing next to his maroon Jaguar.  Tattoos on Wright’s body matched those described by Jackson, and a tattoo on his upper back read, “Mr. Wright.” Officer Leary placed Wright under arrest.  A gun holster was found inside Wright’s vehicle, and a gun matching the weapon described by Jackson was found hidden under a couch cushion inside Craven’s house. 

III. Legal Sufficiency of the Evidence

In challenging the legal sufficiency of the evidence to support his aggravated sexual assault convictions, Wright contends that “[t]he facts in this case arguably point to a situation where [Wright] found himself in a situation that developed into a quasi[-]consensual sexual encounter that did not meet the threshold of a criminal act or acts.”

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.  
Cardenas v. State, 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

We have examined the record and conclude that ample evidence exists from which a jury could reasonably conclude that Wright was guilty of aggravated sexual assault as charged.  Viewing all of the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support Wright’s convictions.  We overrule Wright’s sole point.

IV.  Conclusion

Having overruled Wright’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: May 15, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Wright does not challenge the sufficiency of the evidence to support his conviction for possession of a firearm by a felon.